FILED

2013 Sep-30  AM 11:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| **TONYA DENISE PENNINGTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 6:12-CV-1770-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **ACTING COMMISSIONER,** | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| | ) |
| **Defendant.** | ) |

---

## MEMORANDUM OPINION[1]

Plaintiff Tonya Denise Pennington ("Ms. Pennington") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Ms. Pennington timely pursued and exhausted her administrative remedies

---

[1]Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on September 16, 2013). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).

## FACTUAL AND PROCEDURAL HISTORY

Ms. Pennington was 40 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). *See* Tr. 135. She has a high school education. Tr. 191. Her past work experience includes employment as a garment presser, a phlebotomist, a forklift operator, and a cylinder tester. Tr. 32. She claims she became disabled on May 1, 2008, due to complications arising from breast cancer and related treatments. Tr. 185. She also claimed that she was disabled from working due to hot flashes caused by the medication Tamoxifen, anemia, fatigue, shortness of breath, heart palpitations, headaches, diarrhea, and back and shoulder pain. Tr. 50, 56, 58-59.

On August 5, 2008, Ms. Pennington protectively filed a Title II application for a period of disability and DIB. Tr. 26. On November 6, 2008, the Commissioner initially denied these claims. *Id.* Ms. Pennington timely filed a written request for a hearing on November 10, 2008. *Id.* The ALJ conducted a hearing on the matter on July 19, 2010. *Id.* On September 13, 2010, the ALJ issued a "partially favorable" opinion concluding that Ms. Pennington was disabled from May 1, 2008, through November 6, 2009, but that her disability ended on November 7, 2009. Tr. 33, 36. Ms. Pennington timely petitioned the Appeals Council to review the decision on

2

November 1, 2010. Tr. 134. On March 2, 2012, the Appeals Council issued a denial of review on her claim. Tr. 11.

Ms. Pennington filed a Complaint with this court on May 3, 2012, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on August 27, 2012. Doc. 8. Ms. Pennington filed a supporting brief (Doc. 11) on December 17, 2012, and the Commissioner responded with her own (Doc. 12) on January 15, 2013. With the parties having fully briefed the matter, the court has carefully considered the record and reverses the decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial

3

evidence.  However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[2]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."   20 C.F.R. § 404.1505(a).  To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological

---

[2]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether the claimant has a severe impairment;

(3)     whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

As noted above, this case involves the termination of benefits. An ALJ may terminate a claimant's benefits if there is substantial evidence that there has been medical improvement in the claimant's impairments related to his or her ability to work, and the claimant is now able to engage in substantial gainful activity. 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(a). The Regulations provide a multi-step process for determining whether a claimant's benefits should be terminated. 20 C.F.R. § 404.1594(f). The Commissioner must determine:

(1)     whether the claimant is engaging in substantial gainful activity;

(2)     if not, whether the claimant has an impairment or combination of impairments that meet or equal a listed impairment;

(3)     if not, whether there has been medical improvement;

(4)     if so, whether the improvement is related to the claimant's ability to work;

(5)     if there is no medical improvement or if medical improvement is not related to the claimant's ability to work, whether an exception to medical improvement applies;

(6)     if there is medical improvement related to the claimant's ability to work or if an exception applies, whether the claimant has a severe impairment;

(7)     if so, whether the claimant can perform his or her past relevant work; and

6

(8)    if not, whether the claimant can perform other work.

*Klaes v. Comm'r, Soc. Sec. Admin.*, 499 F. App'x 895, 896 (11th Cir. 2012)

(unpublished) (citing 20 C.F.R. § 404.1594(f)).

## FINDINGS OF THE ADMINISTRATIVE LAW JUDGE

After consideration of the entire record, the ALJ made the following findings:

1.    Ms. Pennington met the insured status requirements of the Social Security Act as of May 1, 2008, the date she became disabled.

2.    She had not engaged in substantial gainful activity since May 1, 2008, the alleged disability onset date.

3.    She had the following severe impairments: history of grade 3 carcinoma of the left breast and hypertension.

4.    From May 1, 2008, through November 6, 2009, the period during which she was disabled, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5.    From May 1, 2008, through November 6, 2009, she had the residual functioning capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except, because of fatigue associated with her chemotherapy and radiation treatments, she was unable to function on a sustained basis at even the sedentary level of exertion.

6.    From May 1, 2008, to November 6, 2009, she was unable to perform her past relevant work.

7.    She was born on February 10, 1970, and was 38 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.     She had at least a high school education and was able to communicate in English.

9.     Her acquired job skills do not transfer to other occupations within the RFC assessed for the period between May 1, 2008, through November 6, 2009.

10.    From May 1, 2008, through November 6, 2009, considering her age, education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that she could have performed.

11.    Ms. Penning had been under a disability, as defined in the Social Security Act, from May 1, 2008, through November 6, 2009.

12.    Medical improvement occurred as of November 7, 2009, the date her disability ended.

13.    Beginning on November 7, 2009, she had not had an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

14.    Beginning on November 7, 2009, she had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a).

15.    The medical improvement that had occurred was related to her ability to work.

16.    Since November 7, 2009, her age category had not changed.

17.    Beginning on November 7, 2009, she had been unable to perform past relevant work.

18.    Beginning on November 7, 2009, transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that she was "not disabled," whether or not she had transferable job skills.

8

19.     Beginning on November 7, 2009, considering her age, education, work experience, and RFC, she had been able to perform a significant number of jobs in the national economy.

20.     Ms. Pennington's disability ended on November 7, 2009.

Tr. 29-36.

## ANALYSIS

## I.     Introduction

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[3] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ms. Pennington, who is proceeding pro se here,[4] urges this court to reverse the Commissioner's decision to deny her benefits on the grounds that the ALJ incorrectly

---

[3]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

[4]Although she is proceeding pro se before this court, she was represented by legal counsel at the administrative level. Tr. 49.

disregarded evidence of her severe back pain and blood disorder, as well as other ailments from which she suffers. Doc. 11 at 1-2. As explained below, the court does not reach these arguments. The court instead concludes that the ALJ did not fully and fairly develop the record in determining that Ms. Pennington's disability had ended.[5] The court will thus remand the case for further development of the record in accordance with this opinion.

## II.   The ALJ's determination that Ms. Pennington's disability had ended was not supported by substantial evidence.

Ms. Pennington endured four surgeries between June 2008 and June 2009. She underwent both radiation and chemotherapy during this time as well. The ALJ found that Ms. Pennington's medical condition had improved enough by November 7, 2009 – roughly five months after her last surgery and 39 days after her final chemotherapy round – that she could be considered no longer disabled. In arriving at this conclusion, the ALJ relied almost exclusively on the treatment notes of Ms. Pennington's oncologist. These notes did not address her "severe" hypertension or other non-severe impairments, nor did they reveal any concrete opinion as to her

---

[5]Although Ms. Pennington did not raise this objection in her brief, the court addresses it as part of its independent obligation on appeal to "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239.

functional limitations. Alone, they do not qualify as substantial evidence supporting the ALJ's decision to terminate her benefits. The ALJ instead should have developed the record by either re-contacting one of Ms. Pennington's treating physicians for a medical source statement or by obtaining one from a consultative examiner.

> **A.** **The ALJ did not have sufficient evidence to conclude Ms. Pennington had medically improved such that she could perform sedentary work.**

As outlined above, an ALJ may terminate a claimant's benefits if there is substantial evidence that:

- there has been medical improvement in the claimant's impairments;

- related to his or her ability to work; and

- the claimant is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(a). The Regulations define "medical improvement" as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled . . ." 20 C.F.R. § 404.1594(b)(1). A finding that there has been a decrease in medical severity "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s) . . ." *Id.* More specifically, whether medical severity has decreased "is determined by a comparison of prior and current medical evidence

which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." *Id.* § 404.1594(c)(1); *see also Freeman v. Heckler,* 739 F.2d 565, 566 (11th Cir.1984) (citation omitted); *Vaughn v. Heckler,* 727 F.2d 1040, 1043 (11th Cir.1984) (citation omitted). The ALJ must "actually compare" the previous and current medical evidence to show that an improvement occurred. *Freeman,* 739 F.2d at 566.

The ALJ here thoroughly reviewed the medical evidence showing that Ms. Pennington was disabled from May 1, 2008, to November 6, 2009. This evidence revealed that she discovered her breast cancer when visiting her treating physician, Dr. R. William Davis, M.D., for back pain in April 2008. Tr. 222. During his examination, Dr. Davis located a mass in her left breast. *Id.* He referred her to Dr. John W. Menard, M.D., a plastic surgeon, who diagnosed her with breast cancer after performing bilateral breast biopsies. Tr. 250. On June 12, 2008, Dr. Menard and Dr. Charles Gross, M.D. performed a lumpectomy, sentinel node biopsy, and bilateral breast reduction on Ms. Pennington. Tr. 225-233. She began the first of four rounds of chemotherapy on July 28, 2008, and completed her final round on September 29, 2009. Tr. 284, 292-93. She also began radiation therapy in November 2008 and completed it in December 2008. Tr. 328, 333, 340. In the meantime, she had breast reconstruction surgery in March 2009 because of a "suspicious mammogram" and had

another surgery in May 2009. Tr. 30. She had her fourth and final surgical procedure in June 2009 when she had "tissue removed from her left breast." *Id.* The ALJ also noted that the medical records from this period documented her "hypertension and history of anemia." Tr. 31. The ALJ ultimately decided to give "great" weight to the "findings and opinions" of Drs. Menard and Gross. *Id.*

The ALJ further examined Ms. Pennington's hearing testimony. The ALJ summarized the following relevant portion regarding her subjective symptoms:

> Since the claimant started on tamoxifen [her cancer medication], she stated that she had severe side effects, including frequent hot flashes. She said these hot flashes occur during the day and the night . . . she also said she is fatigued, has to nap throughout the day and suffers from insomnia and anemia. She stated that the hot flashes wake [her] at night and she only gets four to four and one-half hours sleep. She added that she has to lie down two or three times each day for up to an hour and a half . . . she also has diarrhea two or three times a day and on occasion has nausea in the morning. She stated that her lower back hurts if she sits for too long and that standing causes pain like a bolt of lightning in in her lower back.

*Id.* The ALJ also summarized her description of her daily activities:

> [T]he claimant stated that she fixes breakfast for her eleven-year-old daughter, does housework when she can, sits down frequently and must go to the bathroom repeatedly all day. She stated that she must take frequent breaks when doing housework. Activities outside of the house include going to church. It was the claimant's testimony that she could not work at a job eight hours a day because she gets exhausted.

*Id.*

The ALJ thus meticulously surveyed the medical record, medical opinions, and

personal testimony concerning Ms. Pennington's condition from May 1, 2008, to November 6, 2009. Based on that evidence, the ALJ concluded that she had the "severe" impairments of "history of grade 3 carcinoma of the left breast" and hypertension. Tr. 29. She also found that Ms. Pennington had the non-severe impairments of anemia and "back and shoulder pain secondary to having large breasts," the latter of which she deemed to have improved after Ms. Pennington's breast reduction surgery on June 12, 2008. Tr. 30. The ALJ then determined that Ms. Pennington had the RFC to perform sedentary work but that fatigue "associated with her chemotherapy and radiation treatments" prevented her from performing such work on a sustained basis. *Id.* As Ms. Pennington could not return to her past relevant work – and there were no jobs in large numbers to which she could transition in the national economy – the ALJ decreed that she was disabled. Tr. 32-33.

The ALJ bases her determination that Ms. Pennington had achieved "medical improvement" as of November 7, 2009, entirely on the clinical notes of Dr. David L. Hinton, M.D., of Oncology Associates of West Alabama. Dr. Hinton – as well as a few of his medical colleagues – periodically treated Ms. Pennington from November 2008 until May 2010. Tr. 313-50. This treatment included administering radiation therapy. *Id.* In her official medical improvement finding, the ALJ highlights two appointments Ms. Pennington had with Dr. Hinton in the early months of 2010. Tr.

33. On March 12, 2010,[6] Dr. Hinton recorded that a bone scan Ms. Pennington had undergone had not revealed any evidence of metastic disease in her bones. Tr. 345. He also noted that her hemoglobin electrophoresis – due to her microcytic anemia – was normal. *Id.* Ms. Pennington further vouched to him that she was feeling well and "denied any other new problems or complaints." Tr. 344. Earlier, on January 15, 2010, Dr. Hinton noted that an October 14, 2009, MRI had not shown any suspicious findings. Tr. 347. Ms. Pennington did complain about "occasional left arm numbness and some swelling around her wrists," as well as some nausea. *Id.* But, she otherwise said she was feeling well, tolerating her Tamoxifen medication, and denying any new problems. *Id.*

The court is unsure that this sparse evidence substantially supports a finding of "medical improvement" under the statutory definition articulated above. Even if it does, it does not reveal (because it does not address) any serious improvement in her "severe" hypertension – much less some of the other medical ailments and symptoms she claimed to be evincing. And the evidence *certainly* does not support the ALJ's later finding that Ms. Pennington had the RFC to return to sedentary work.

---

[6]In her opinion, the ALJ mistakenly states that this appointment had occurred on November 6, 2009. Tr. 33. Dr. Hinton had *also* examined Ms. Pennington on November 6, 2009, Tr. 350, but the bone scan and hemoglobin electrophoresis to which the ALJ refers were not reviewed until the March 12, 2010, appointment. Tr. 345. This error does not change the court's core conclusion that the ALJ lacked substantial support to conclude Ms. Pennington had the RFC to perform light work beginning on November 7, 2009.

In justifying that conclusion, the ALJ refers generally to Ms. Pennington's January 15, 2010, and March 12, 2010, appointments with Dr. Hinton:

> On both occasions, the claimant denied any new complaints or problems. In January she did complain of some nausea, occasional left arm numbness and some swelling around her wrist. However, these complaints were not nearly as severe as described in the claimant's testimony. The claimant's fatigue and symptoms related to her chemotherapy and radiation treatment improved with the cessation of these treatments. Even though the claimant continues to take tamoxifen, the side effects described in her testimony are not reported [in] her [treatment notes].

Tr. 34. The ALJ goes on to discredit Ms. Pennington's description of her limited daily activities because it could neither be objectively verified nor medically substantiated.

This cited evidence is simply insufficient to support an RFC determination of the kind derived here. The RFC is an assessment based upon *all* of the relevant evidence of a claimant's remaining ability to do work despite his or her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)) (emphasis added). The assessment must include all medically-determinable impairments, both severe and non-severe. 20 C.F.R. § 1545(a)(2). The ALJ had previously found that Ms. Pennington did not have the RFC to perform sedentary work because of "fatigue associated with her chemotherapy and radiation treatments." Tr. 30. She now states that Ms. Pennington's "fatigue and symptoms related to her chemotherapy and radiation treatment improved with the cessation of

these treatments" and that any side effects from Tamoxifen are not reported in Dr. Hinton's treatment notes. The ALJ presumably inferred from these facts that Ms. Pennington could therefore perform sedentary work.

This inference is flawed in several respects. First, the ALJ did not discuss Ms. Pennington's hypertension at all, nor how it may have affected her RFC. She also completely ignored Ms. Pennington's allegedly disabling hot flashes, insomnia, and nausea. The ALJ further assumed without warrant that Ms. Pennington's fatigue was solely caused by her chemotherapy and radiation. In fact, this conflicts with Ms. Pennington's testimony that Tamoxifen – which she was still taking at the time of her hearing – caused her severe fatigue and exhaustion. Tr. 54-59. The ALJ stated that there was no evidence of such side effects in Dr. Hinton's treatment notes, Tr. 34, but this observation underscores the essential problem with the ALJ's RFC diagnosis: it relies (only) on, at best, incomplete evidence.

Dr. Hinton was an oncologist who was treating Ms. Pennington for her breast cancer and the effects associated with that illness; his notes reflect this fact. He was not offering in these notes a global assessment of Ms. Pennington's health and functional abilities. A treating physician's notes may, of course, constitute a medical opinion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). But they only qualify as such where they plausibly offer some prognosis as to what a

claimant can still do despite his or her impairments. *See id.* (citations omitted). These key elements are missing from Dr. Hinton's notes. What could be gleaned from them was not "substantial" evidence supporting the ALJ's RFC diagnosis. *See Clemmons v. Astrue*, No. 3:06-CV-1058-VEH, slip op. at 11 (N.D. Ala. Jun. 11, 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001)) ("[W]here the treating physician has not discharged the patient from treatment and the physician has not made, and was not asked to make, a determination regarding the plaintiff's functioning capabilities, there is no substantial evidence to support an ALJ's functional capacity finding.").

### B. The ALJ should have instead developed the record by obtaining a medical source statement of some kind.

The ALJ should have rectified this deficiency by obtaining a medical source statement ("MSS") addressing Ms. Pennington's functional abilities and limitations. While Ms. Pennington had the responsibility to prove that she was disabled, the special nature of her case demanded that the ALJ develop the record further. Because she did not, the court will remand the case for such action to occur.

### (1) The ALJ's Duty to Develop the Record

Social Security proceedings "are inquisitorial rather than adversarial." *Sims v.*

*Apfel*, 530 U.S. 103, 111 (2000). The ALJ thus has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The ALJ's duty to "fully and fairly develop the record," *Coward v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). As noted above, Ms. Pennington was legally represented in her hearing below. Thus, the ALJ had no *special* duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (emphasis added).

The ALJ must specifically "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). The ALJ should recontact medical sources when the evidence received from that source is inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support

19

of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam).

Neither the Eleventh Circuit nor this court has adopted a bright line test to determine whether the lack of a treating physician's MSS as to a claimant's functional ability calls for a remand. *Rose v. Astrue,* No. 11-CV-1186-VEH, slip op. at 17–18 (N.D. Ala. Nov. 1, 2011); *Eljack v. Astrue*, No. 2:11-CV-1854-VEH, 2012 WL 2476405, at *7-8 (N.D. Ala. June 22, 2012). In some cases, a treating physician's MSS is necessary. *See, e.g.*, *Clemmons*, slip op. at 11-13; *Coleman v. Barnhart,* 264 F. Supp. 2d 1007, 1010-11 (S.D. Ala. 2003). In others, it is not. *See, e.g.*, *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (unpublished) (holding that, even though ALJ discounted treating physician's opinion regarding claimant's functional abilities and limitations, there otherwise remained substantial evidence to find the claimant not disabled); *Moore v. Barnhart*, 405 F.3d 1208, 1212-13 (11th Cir. 2005) (holding that lack of treating physician's medical opinion did not invalidate ALJ's RFC assessment because there was substantial evidence, outside the objective medical evidence, supporting such); *Eljack v. Astrue*, 2012 WL 2476405, at *8 (similar). In sum, the outcome of these cases turns upon the sufficiency *vel non* of other evidence in the record that supports the ALJ's RFC determination, even in the absence of a MSS from the claimant's treating physician.

20

*(2)     Ms. Pennington's case required an MSS.*

Based on the particular facts and circumstances of this case, the court finds that a MSS from a medical doctor was necessary here. As documented above, the ALJ relied on the clinical notes from three appointments Ms. Pennington had with her treating oncologist in order to determine that she was no longer disabled and could adequately perform sedentary work. This evidence was insufficient. It did not address some of her impairments, and it offered no assessment *whatsoever* as to her functional abilities and limitations. The ALJ determined that fatigue was the only inhibition on Ms. Pennington's RFC and that it had disappeared with the cessation of her chemotherapy and radiation. Neither of these conclusions were substantially supported by the record, and they arguably conflicted with it. This judgment required, at the very least, input from a qualified physician.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence. Accordingly, the decision will be reversed and remanded by separate order.

**DONE** and **ORDERED** this the 30th day of September, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge